IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-00681-ZLW-MJW

MICHAEL T. HUBER,

Plaintiff,

v.

DICK ROBERTS, Case Manager, et al.,

Defendants.

---

**RECOMMENDATION ON
PLAINTIFF'S TRO AND ORDER TO SHOW CAUSE (Docket No. 13)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to this court pursuant to an Order of Reference to Magistrate Judge issued by Senior Judge Zita L. Weinshienk on May 5, 2007 (Docket No. 8).

The pro se plaintiff is in the custody of the Colorado Department of Corrections ("DOC") and is currently housed in the Colorado State Penitentiary ("CSP") in Canon City, Colorado.  In his Prisoner Complaint (Docket No. 4) brought pursuant to 42 U.S.C. § 1983, he alleges that he is being denied indigent status and is not able to purchase hygiene items, even though his account has a negative balance and he has a monthly income of about $1.60.  He claims that he is

> getting sick my oral hygiene is getting bad.  I get no help from the D.O.C.

2

> When I do get toothpaste it is 3 years past the expiration date I get one very small bar of soap to last 3 weeks and I do not recieve [sic] these items regurly [sic]. I cant [sic] communicate with family. My health is getting bad from improper hygiene. They deny me indigency every month.

(Docket No. 4 at 3). He seeks monetary and injunctive relief. The defendants who remain in the action are plaintiff's case manager Dick Roberts, Kristina Ireland from the Accounts Department, and T. Fluharty from Inmate Banking.

Now before the court is the plaintiff's document entitled "TRO and Order to Show Cause" (Docket No. 13) in which plaintiff states:

> On 6-16-07 I asked to be moved from case manager Dick Roberts case load because of the case against him. He continues to ignore my requests. I'm in Ad-Seg Placement Supermaxx Facility and I have to go through him to get out also my parole hearings is coming up and he has not returned calls from my family to put a parole plan in so it is affecting my life bieng [sic] on his case load. It would be in the best interest for me to be moved to the other Ad-Seg facility, Sterling Correctional Facility.

(Docket No. 13). In a proposed order accompanying that motion, plaintiff asks for an injunction, claiming

> 1) I continue to be denyed [sic] indigent status
>
> 2) Money damages will not fix that, will only fix my balan[ce]
>
> 3) If I do not get help my health will continue to fail
>
> 4) if you grant this injuntion [sic] it will only help me, not harm the defendants
>
> I want to recieve [sic] indigent status
> . . .
>
> Roberts is my case manager handles all things concerning me want removed from my case. Move to Ad-Seg facility Sterling Correctional Facility. . . .

3

(Docket No. 13-2).

This court held a hearing on this motion on July 19, 2007. Plaintiff appeared and testified by videoconference, as did the defense witnesses,[1] defendant Christina Ireland, the Inmate Banking Office Supervisor; defendant Richard Roberts, plaintiff's case manager; and nurse practitioner Kathleen Boyd. Defendants' Exhibits A, B, C, F, H, and L were admitted into evidence. Argument was then heard from plaintiff and defense counsel.

The court has considered the plaintiff's motion, the testimony, evidence, and argument presented at the hearing, the court's file, and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and recommendation that the motion be denied.

"'[A] preliminary injunction is an extraordinary remedy, [and thus] the right to relief must be clear and unequivocal.'" Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1298 (10th Cir. 2006) (quoting Schrier v. University of Colorado, 427 F.3d 1253, 1258 (10th Cir. 2005); SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)). Plaintiff must show the following in order to be entitled to a preliminary injunction: "(1) he . . . will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest;

---

[1] At the time the hearing was set, none of the defendants had been served with process. Nevertheless, this court directed that a representative from the Attorney General's Office appear for the hearing and be prepared to call witnesses and present evidence and argument with regard to the plaintiff's motion. (Docket No. 17).

4

and (4) there is a substantial likelihood of success on the merits." Id. (quotations omitted). "If an injunction would 'alter the status quo,' the above factors must 'weigh heavily and compellingly' in the movant's favor." Stine v. Wiley, 2007 WL 201251 (D. Colo. Jan. 24, 2007). "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." Id. In this case, this court finds that the plaintiff has failed to meet the standards for a TRO and preliminary injunction. For the reasons stated below, the court finds that the plaintiff has failed to demonstrate any evidence that he will be irreparably harmed if an injunction or restraining order is not issued, nor has he shown a substantial likelihood of success on the merits.

"A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Penrod v. Zavaras, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825 (1994)). "Although a denial of basic hygiene items might meet this standard under extreme conditions," Scott v. Case Manager Owens, 80 Fed.Appx. 640, 643 (10th Cir. 2003), plaintiff here has not come close to showing a substantial risk of serious harm.

First, the evidence does not support the plaintiff's contention that he has been and is being denied basic hygiene items. Defendant Roberts, plaintiff's case manager, testified that an inmate may buy hygiene items from the canteen and may also get a hygiene kit for 90 cents if qualified. According to DOC Administrative Regulation

5

Implementation Adjustments regarding AR 850-11, see Defs.' Ex. H, a "High Security Management (HSM) Cleanliness Kit" "consists of a bar of antibacterial soap, a thumb handle toothbrush, and one tube of toothpaste." That document further provides that "[o]ffenders who do not meet the criteria for indigency status and have $3.00 or less available account balance (and who have not purchased any food items in the past 30 days) will be eligible to purchase one High Security Cleanliness Kit each month. The kit may be purchased after offender pay is posted for the month, at cost to the offender. Offenders with insufficient funds or negative account balances will still be eligible to purchase the kit." Defs.' Ex. H at 2. Defendant Ireland also testified that an inmate is allowed to go into a deficit to purchase a hygiene kit.

Plaintiff testified that he has been given a hygiene kit, which consists of a bar of soap, a toothbrush, and toothpaste, as recently as July 16, 2007. As shown by defendants' Exhibit A, and as testified to by defendant Ireland, plaintiff's inmate Statement of Account Activity shows that the plaintiff received hygiene kits on February 12, March 13, April 11, June 18, and July 16, 2007. In addition, defendants' Exhibit B shows that while the plaintiff did not receive all of the items he ordered from the canteen due to insufficient funds, he ordered and received the following hygiene items: deodorant and toothpaste on July 11, 2006; shampoo, soap, and toothpaste on August 8, 2006; shampoo, soap, toothpaste, and a cup on September 12, 2006; conditioner, shampoo, and soap on November 7, 2006; soap on December 5, 2006; soap on December 19, 2006; a toothbrush on January 9, 2007; toothpaste and conditioner on February 6, 2007; a comb, conditioner, shampoo, and soap on March 6, 2007;

6

shampoo, soap, and toothpaste on April 10, 2007; and three bars of soap on May 15, 2007. Most recently, on July 10, 2007, plaintiff spent $2.13 on Fritos corn chips. According to defendants' Exhibit C, which is a list of items available to plaintiff for purchase from the CSP canteen, he could have purchased toothpaste for 95 cents, a toothbrush for 21 cents, shampoo for 45 cents or $1.02, and soap for 68 or 41 cents. Instead, he opted for the snack.

Furthermore, the record shows that the plaintiff has not met the definition of "indigent" under the DOC Regulations. According to AR 850-14, inmates are "indigent" if they meet <u>all</u> of the following criteria:

> a. The offender has not received offender pay for the preceding 30 days.
> b. The offender is not currently employed.
> c. The offender's available account balance has not reached the amounts specified in section IV.C. of this administrative regulation.
> d. The offender is not in Community Corrections or on parole.

Defs.' Ex. F, AR 850-14(IV)(B)(3). The regulations note that "[a]pproved indigency status is valid for a 30 day period. If necessary, the offender will need to reapply for indigency status." Defs.' Ex. F, AR 850-14(IV)(B)(3). Here, defendant Roberts testified that plaintiff did not meet the first criteria and thus is not considered to be indigent because each month over the past year, plaintiff has received inmate pay. Defendant Ireland testified that the records show that plaintiff has received inmate pay. For example, defendants' Exhibit A shows inmate pay on April 6, 2007, in the amount of $5.06; on May 7, 2007, in the amount of $4.83; on June 5, 2007, in the amount of $5.06; and on July 5, 2007, in the amount of $4.83. Thus, pursuant to the first criteria of the administrative regulations, plaintiff does not qualify for indigent status.

7

Nevertheless, even though the plaintiff's total account balance is in the negative,[2] he can use some of his monthly inmate pay for elective withdrawals, such as buying hygiene products and other items from the canteen. As shown above, the record demonstrates that plaintiff has done so on a number of occasions.

Furthermore, while in his Prisoner Complaint and motion plaintiff alleges injury as a result of purportedly not receiving basic hygiene items, during the hearing he made no showing of any injury. Instead, defense witness nurse practitioner Boyd testified that a review of plaintiff's medical file from June 2006 to the present does not show any complaints or evidence of hygiene-related medical problems. In fact, plaintiff testified that he was seen as requested for a check up by a dental hygienist last month.

Finally, while plaintiff is also seeking assignment of a new case manager and a transfer out of CSP, he has not shown any basis for such relief. According to Roberts, case managers are assigned based on where the inmate is assigned to live. Switching case managers would require the inmate's assignment to a new pod or facility. It is well-established, however, that an inmate has no justifiable expectation that he will be incarcerated in any particular prison. Olim v. Wakinekona, 461 U.S. 238, 245 (1983). See Meachum v. Fano, 427 U.S. 215, 225; Johnson-Bey v. Ray, 2002 WL 440796 (10th Cir. Mar. 19, 2002) (agreeing with district court's dismissal of the plaintiff's request

---

[2] Plaintiff repeatedly made mention of the fact that his available account balance has not exceeded $4.60, but that amount only comes into play under AR 850-14(IV)(C)(1)(a) when **all** of the criteria in AR 850-14(IV)(B)(1) are met, which is not the case here because plaintiff received offender pay each month.

for injunctive relief, i.e., his request to be transferred to another facility).

Plaintiff has made no showing that changing his case manager will impact his chances of parole. Plaintiff's fear that defendant Roberts will not help with plaintiff's parole hearing in the way that plaintiff's thinks Roberts should is mere conjecture. Roberts testified that he has not received calls from the plaintiff about plaintiff's parole plan or hearing; if they did call, he would call them back. According to Roberts, the case manager does not make a recommendation to the parole board. A lot of his duties with respect to plaintiff's upcoming parole hearing in October are already done on the computer; he will merely be updating certain information. All case managers prepare the same packet for parole hearings.

Significantly, Roberts also testified that this lawsuit will not affect the way he acts as plaintiff's case manager or how he would prepare for plaintiff's parole hearing. He does not believe he has a conflict of interest.

In sum, plaintiff has not demonstrated any evidence that he will be irreparably harmed if he is not transferred out of CSP or assigned a new case manager. Absent a showing of a substantial risk of serious harm, allowing an inmate plaintiff to dictate where he is housed merely by commencing an action against his case manager should not be permitted.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** the plaintiff's TRO and Order to Show Cause (Docket No. 13), which has been construed by this court as a motion for a temporary restraining order, be denied.

9

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  July 24, 2007           s/ Michael J. Watanabe  
       Denver, Colorado          Michael J. Watanabe  
                                         United States Magistrate Judge