IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00681-ZLW-KMT

MICHAEL T. HUBER,

    Plaintiff,

v.

DICK ROBERTS, Case Manager
KRISTINA IRELAND, Accounts, and
T. FLUHARTY, Inmate Banking,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on Defendant's "Motion for Summary Judgment" (Doc. No. 34, filed on July 7, 2008).

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation. The *pro se* plaintiff was in the custody of the Colorado Department of Corrections ("CDOC") and housed in the Colorado State Penitentiary ("CSP") in Canon City, Colorado when the Complaint allegations occurred. It appears that Plaintiff was released on August 5, 2008 to begin his period of mandatory parole.

Defendants are Dick Roberts, CSP Case Manager ("Defendant Roberts"), Kristina Ireland, Supervisor of the CDOC Inmate Banking Office ("Defendant Ireland"), and Tellie Fluharty, Inmate Banking Officer ("Defendant Fluharty") (Def's Mot. at 2).

In his Prisoner Complaint brought pursuant to 42 U.S.C. §1983, Plaintiff alleges that he is being denied indigent status, and thus not able to purchase hygiene items, even though his account has a negative balance and he has a monthly income of about $1.60. (Compl. at 4, [hereinafter "Compl."] [filed May 3, 2007].) Plaintiff claims that he is

> getting sick my oral hygiene is getting bad. I get no help from the D.O.C. When I do get toothpaste it is 3 years past the expiration date I get one very small bar of soap to last 3 weeks and I do not receive [sic] these items regurly [sic]. I cant [sic] communicate with family. My health is getting bad from improper hygiene. They deny me indigency every month.

(*Id*. at 3). Plaintiff seeks monetary and injunctive relief.

Plaintiff previously filed a "TRO and Order to Show Cause" (Doc. No. 13, filed July 24, 2007) seeking an injunction on the same issues contained in the Complaint. A hearing was held on that motion before Magistrate Judge Watanabe on July 19, 2007. Plaintiff appeared and testified by video conference, as did defense witnesses Defendant Roberts, Defendant Ireland, and Kathleen Boyd, a Nurse Practitioner ("Nurse Boyd").

In their motion, Defendants Roberts, Ireland, Fluharty argue the Complaint should be dismissed because: (1) Plaintiff failed to exhaust administrative remedies; (2) the official capacity claims are barred; (3) Defendants were not deliberately indifferent to an excessive risk to Plaintiff's health; (4) Plaintiff has no constitutional right to indigency status, free hygiene

items, or free postage; (5) Defendants are entitled to qualified immunity in their individual capacities; (6) the Prison Litigation Reform Act bars Plaintiff's request for damages; and (7) Plaintiff's requests for injunctive relief are moot as of August 5, 2008. (Defendants' Mot. for Summ. J. at 7, 8, 11, 13, 14, 15 [hereinafter "Def. Mot. for Summ. J."] [filed July 7, 2008]).

## PROCEDURAL HISTORY

Plaintiff's Complaint was filed on May 3, 2007. (Compl). Defendants filed their motion to dismiss or for summary judgment on July 7, 2008. (Def's Mot.). No response or reply has been filed. This matter is ripe for review and recommendation.

## LEGAL STANDARDS

1. **Pro Se** *Plaintiff*

Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## 2. *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*,

756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

3.  *Prison Litigation Reform Act: Damages*

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of a physical injury." 42 U.S.C. § 1997e (e). An inmate's "suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms." *Perkins v. Kansas Dept. of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999). As noted in Section III (B) herein, Plaintiff has presented no evidence that he suffered any physical injury, therefore, barring a damages claim.

4.  *Injunctive Relief*

An inmate's release from prison moots any claim of perspective relief related to the conditions of the inmate's prior confinement. *See e.g., McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (holding that when an inmate's claim for prospective injunctive relief regarding conditions of confinement becomes moot due to the inmate-plaintiffs release from confinement); *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (following release from prison, inmate's claims for declaratory and injunctive were moot); *Green v. Branson*, 108 F.3d 1296 (10th Cir. 1997) (inmate plaintiffs claims for injunctive relief mooted by his release from prison where there was no indication that plaintiff was still on parole or supervised release

following release). At this point, given the plaintiff's release from prison on August 5, 2008

(Carlson Aff., ¶5), all claims for injunctive relief are moot.

**ANALYSIS**

**I.      Exhaustion of Administrative Remedies**

Defendants move to dismiss the claims against them based upon Plaintiff's failure to exhaust his administrative remedies, as required by the PLRA (Defs Mot. at 7). *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) of the PLRA provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2007).

The Supreme Court recently set forth a new standard to govern PLRA lawsuits: "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199. 216 (2007). "[T]he burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

CDOC Regulation 850-04 sets forth a three-step grievance process for inmate grievances.[1] Inmates must timely file step 1, 2, and 3 grievances on a specific issue to exhaust

---

[1] At each step, the inmate is directed to limit the grievance to the space provided on a standard one-page form, although exhibits may be attached at Step 3. Colo. Dep't of Corr. Reg. 850-04 § IV(B)(2)(a). Step 1 grievances are investigated and answered by the "involved staff

6

their administrative remedies. (*Id.*)  In this case, while Plaintiff did file grievances concerning calculation errors of his inmate account, Plaintiff did not file any Step 3 grievances alleging that he had been improperly denied indigency status with respect to hygiene items.  (*See* Aff. of Anthony Decesaro ¶¶ 9-11 [hereinafter "Decesaro Affidavit"] attached to Defs. Mot. for Summ. J.)  He also did not file any Step 3 grievance alleging that the was suffering medical or dental problems due to a denial of hygiene items. (*Id.*)

The court finds Plaintiff failed to exhaust his administrative remedies regarding the claims asserted in this case.  *Booth v. Churner*, 532 U.S. at 741.  Therefore his claims should be dismissed for failure to exhaust his administrative remedies.

**II.     Official Capacity Claims**

To the extent Plaintiff's claims are not barred for failure to exhaust administrative remedies, claims against the Defendants in their official capacities will be treated as claims against their employer, CDOC.  *Whitney v. State of N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1197) (a suit against an individual in his official capacity is actually a suit against the agency which the individual represents).  State officials acting in their official capacities are not "persons" subject to liability under ¶ 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  Accordingly, Defendants cannot be sued in their official capacities for damages under ¶ 1983.

---

member" and another appointed staff member, while Step 2 grievances are investigated and answered by a CDOC administrative head or designee. *Id.* § IV(C)(1)(a) & (b).  A designated grievance officer outside CDOC supervision responds to Step 3 grievances and may deny the grievance on either substantive or procedural grounds. *Id.* § IV(C)(1)(c).

The official capacity claims against Defendants Roberts, Ireland, and Fluharty for the various alleged constitutional violations must be treated as claims against the CDOC. The CDOC, as a department of the State of Colorado, and its correctional facilities are protected by Eleventh Amendment immunity. *Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (recognizing that State of Colorado and CDOC are immune from liability under the Eleventh Immunity); *Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988) (the immunity conferred by the Eleventh Amendment extends to the state and instrumentalities); *see e.g., Alabama v. Pugh,* 438 U.S. 781 (1978) (suit against Alabama Department of Corrections is barred by the Eleventh Amendment); *Eastwood v. Department of Corrections*, 846 F.2d 627, 632 (10th Cir. 1988) (concluding that the Oklahoma Department of Corrections is arm of the state and should be entitled to absolute immunity).

"It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F. 3d 584, 588 (10th Cir. 1994). The State of Colorado has not waived its Eleventh Amendment immunity, *See Griess* at 1044-45, and congressional enactment of 42 U.S.C. ¶1983 did not abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 340-345 (1979).

### III. Individual Capacity Claims

Personal or individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," while an official capacity suit

is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159 (1985) (internal quotation marks omitted).

A.  **Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, e.g., whether the medical need of the prisoner is "serious," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and a subjective component, e.g., whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In order to assert an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, a plaintiff must demonstrate: (1) he suffered objectively serious medical needs, and; (2) the prison officials actually knew of and deliberately disregarded those needs. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (two-pronged standard "requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious"); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (same).

The subjective component follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834. An

inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. Muskogee*, 900 F.2d 1489, 1495–96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496. The Supreme Court explained the test for deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Farmer*, 511 U.S. at 837.

Personal participation is an essential allegation in a §1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–1263 (10th Cir. 1976). To establish personal liability, a plaintiff must show first that the official caused a deprivation of a constitutional right. *Graham*, 473 U.S. at 166. Second, a plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's personal activities. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for §1983 claims, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial"). It is beyond dispute that "for

liability to arise under §1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (affirming district court's dismissal, in part, where "plaintiff failed to allege personal participation of the defendants"); *accord Clayton v. Ward*, 232 F. App'x 827, 830 (10th Cir. 2007); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a §1983 action unless he "participated or acquiesced" in an alleged constitutional violation).

Accepting the factual rendition as set forth by the Plaintiff in the Complaint as true, the court must determine if the facts support a claim that Defendants violated the Eighth Amendment in that, 1) Plaintiff had a serious medical condition caused by the deprivation of hygiene items, and, 2) that the officials acted with a sufficiently culpable state of mind by depriving Plaintiff of those basic hygiene items.[2]

A deprivation of hygiene items without any corresponding injury would not state an Eighth Amendment violation. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th. 1996) (holding prisoner's claim that prison officials' refusal to provide hygiene items causing "his gums to

---

[2] Plaintiff further argues that he was prevented from receiving postage stamps. (Compl. at 4.) However, inmates do not have unlimited rights to free postage. *See Twyman v. Crisp*, 584 F.2d 352 (10th Cir. 1978). But some courts have required a minimum of free postage for prisoners. *See e.g.*, *Brenneman v. Madigan*, 343 F. Supp. 128 (N.D. Cal 1972); *William v. Ward*, 404 F. Supp. 170 (S.D.N.Y, 1975) (four free stamps per month are provided). But Plaintiff did have funds in his account most of the time in which to purchase items from the canteen, including postage for personal mail, but he apparently chose not to do so.

bleed and recede and tooth decay" states a claim for a violation of the Eighth Amendment). Plaintiff alleges his "health is getting bad" as a result of purportedly not receiving basic hygiene items (Compl. at 5). However during the hearing on the Motion for Temporary Restraining Order, Nurse Boyd testified that a review of Plaintiff's medical file from June 2006 to July 24, 2007 did not show any complaints or evidence of hygiene-related medical problems. (Defs. Ex. A-1, Defs. Mot. for Summ. J, Transcript of Motion for Temporary Restraining Order Hearing held July 19, 2007 [hereinafter "Trans."] at 56, ¶1:3-6; 1:7-15). Likewise, Defendant Roberts testified he never observed Plaintiff with any hygiene problems. (*Id*. at 39 ¶ 1:12-14.) During his time at CSP, Plaintiff was able to see medical and dental providers upon request. (Trans. at 39, ¶ 1.18-25). In fact, Plaintiff testified that he was seen as requested for a check up by a dental hygienist in June 2007, a month and one-half prior to the hearing. (*Id*. at ¶1:21-25.) Following the hearing, Magistrate Judge Watanabe concluded Plaintiff "made no showing of any injury." (*See* Recommendation at 7, Doc No. 22, filed on July 24, 2007).

Further, the evidence does not support Plaintiff's claim that any of the defendants denied basic hygiene items. Defendant Roberts, Plaintiff's case manager, testified at the hearing that an inmate may buy hygiene items from the canteen and may also get a hygiene kit for 90 cents if qualified. (Trans.at 39 ¶¶ 1:17-23.) Inmates also have the option to go into a negative balance in their accounts for these kits. *Id*. Captains, on occasion, have also given these kits away free. *Id*.

According to DOC Administrative Regulation Implementation Adjustments regarding AR 850-11 (*see* Defs. Ex. H), a "High Security Management (HSM) Cleanliness Kit" "consists of a bar of antibacterial soap, a thumb handle toothbrush, and one tube of toothpaste." That document further provides that,

> Offenders who do not meet the criteria for indigency status and have $3.00 or less available account balance (and who have not purchased any food items in the past 30 days) will be eligible to purchase one High Security Cleanliness Kit each month. The kit may be purchased after offender pay is posted for the month, at cost to the offender. <u>Offenders with insufficient funds or negative account balances will still be eligible to purchase the kit</u>. (Defs. Ex. H at 2) (emphasis added).

Defendant Ireland also testified that an inmate does not have to spend money to receive a hygiene kit, and inmates are allowed to go into a deficit to purchase a hygiene kit. (Trans. at 19 ¶1: 8-12.)

Plaintiff testified that he had been given a hygiene kit prior to the the July 19, 2007 hearing. (*Id*. at 10 ¶1: 8.) As shown by Defendants' Exhibit A, and as testified to by Defendant Ireland at the hearing, Plaintiff's Inmate Statement of Account Activity shows that the he received hygiene kits on February 12, March 13, April 11, June 18, and July 16, 2007; once a month as specified, the Plaintiff received his dental hygiene supplies.

According to the record, Plaintiff purchased his own hygiene supplies (soap, shampoo, conditioner, toothbrush, toothpaste) from the canteen on several occasions. Defendants' Exhibit B shows that while the Plaintiff did not always receive all of the items he ordered from the

13

canteen due to insufficient funds, he ordered and received the following hygiene items: deodorant and toothpaste on July 11, 2006; shampoo, soap, and toothpaste on August 8, 2006; shampoo, soap, toothpaste, and a cup on September 12, 2006; conditioner, shampoo, and soap on November 7, 2006; soap on December 5, 2006; soap on December 19, 2006; a toothbrush on January 9, 2007; toothpaste and conditioner on February 6, 2007; a comb, conditioner, shampoo, and soap on March 6, 2007; shampoo, soap, and toothpaste on April 10, 2007; and four bars of soap on May 15, 2007. (Defs.' Ex. C). Also of interest, on July 10, 2007, Plaintiff spent $2.13 on Fritos corn chips instead of purchasing hygiene items that were available including toothpaste for 95 cents, a toothbrush for 21 cents, shampoo for 45 cents or $1.02, and soap for 68 or 41 cents. (*Id*).

Furthermore, the record shows that the plaintiff has not met the definition of "indigent" under the DOC Regulations. According to AR 850-14, inmates are "indigent" if they meet <u>all</u> of the following criteria:

a. The offender has not received offender pay for the preceding 30 days.
b. The offender is not currently employed.
c. The offender's available account balance has not reached the amounts specified in section IV.C. of this administrative regulation.[3]

---

[3] § IV.C outlines the assistance available to indigent inmates. It provides in relevant part, If an offender's available account balance has not exceeded $4.60 at any time during the past 30 days. . . he/she will be eligible for. . . hygiene items. . . postage assistance shall be limited to a total not exceeding $2.00 per month. . . . If an offender's available account balance has not exceeded $8.10 at any time during the past 30 days. . . he/she is eligible for the legal mail privileges.

d. The offender is not in Community Corrections or on parole.

Defs.' Ex. F, AR 850-14(IV)(B)(3). The regulations note that "[a]pproved indigency status is valid for a 30 day period. If necessary, the offender will need to reapply for indigency status." Defs.' Ex. F, AR 850-14(IV)(B)(3).

At the hearing, Defendant Robert's uncontested testimony was that Plaintiff did not meet the first criteria and thus was not considered to be indigent because each month over the past year, Plaintiff had received periodic inmate pay. (Trans. at 38, ¶1:20-, 23.) Defendant Ireland also testified that the records show that Plaintiff had received inmate pay. (*Id* ¶ 1:11-13.) For example, Defendants' Exhibit A shows inmate pay on April 6, 2007, in the amount of $5.06; on May 7, 2007, in the amount of $4.83; on June 5, 2007, in the amount of $5.06; and on July 5, 2007, in the amount of $4.83. Thus, under the first criteria of the administrative regulations, Plaintiff did not qualify for indigent status. During the hearing, Plaintiff repeatedly made mention of the fact that his available account balance had not exceeded $4.60, but that amount only comes into play under AR 850-14(IV)(C)(1)(a) when **all** of the criteria in AR 850-14(IV)(B)(1) are met, which is not the case here because Plaintiff received offender pay each month.

Nevertheless, even though the Plaintiff's total account balance was in the negative, he could still have purchased hygiene products. The records show decisively that, in fact, the defendant did receive hygiene products on a regular basis. Since is no evidence that Defendants

15

intentionally deprived him of any hygiene, Plaintiff fails to provide sufficient facts to establish the objective component necessary to prove an Eighth Amendment violation both because he did have hygiene items and there is no evidence of any injury or harm caused to Plaintiff by the lack of hygiene items. Further, there is no evidence that the Defendants knew of and consciously disregarded a substantial risk of serious harm to Plaintiff's health, and therefore, Plaintiff has not provided evidence sufficient to satisfy the subjective component of an Eighth Amendment violation either.

### B. Qualified Immunity

The doctrine of qualified immunity shields a government official's performance of discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining eligibility for qualified immunity on claims against a defendant in his individual capacity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if he has, (2) "whether the right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Keylon v. City of Albuquerque*, 535 F. 3d 1210, 1218 (10th Cir. 2008) (internal citations and quotations omitted). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, ---S.Ct.---, 2009 WL 128768, at *9.

Because the Plaintiff has failed to provide evidence of any constitutional violation, the Defendants are entitled to qualified immunity on all claims against them in their individual capacities.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendant's "Motion for Summary Judgment" (Doc. No. 34, filed on July 7, 2008) be **GRANTED**, and all claims against Defendants Roberts, Ireland, and Fluharty be dismissed.

**ADVISEMENT TO THE PARTIES**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make

timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d
1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 25th day of February, 2009

**BY THE COURT:**

_Kathleen M. Tafoya_
Kathleen M. Tafoya
United States Magistrate Judge